STEPHEN K. CHO (297347)
stephen.cho@dinsmore.com
DINSMORE & SHOHL LLP
550 S Hope Street, Suite 1765
Los Angeles, CA 90071
Ph: (213) 335-7737

KAREN KREIDER GAUNT (Oh. Bar No. 68418)
karen.gaunt@dinsmore.com
*Pro hac vice pending*
MICHAEL J. WHEELER (Oh. Bar No. 95319)
michael.wheeler@dinsmore.com
*Pro hac vice pending*
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
Fax: (513) 977-8141

Attorneys for Plaintiff
Oakley, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

OAKLEY, INC.

Plaintiff,

v.

JMM LEE PROPERTIES, LLC,

Defendant.

Case No.: 19-cv-1727

**COMPLAINT FOR *DE NOVO* REVIEW OF DECISION OF THE TRADEMARK TRIAL AND APPEAL BOARD AND FOR DECLARATORY RELIEF**

Plaintiff, Oakley, Inc. ("Oakley"), for its Complaint against Defendant, JMM Lee Properties, LLC ("JMM"), hereby states and alleges as follows:

## NATURE OF THE CASE

1. This is an action under Section 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1), seeking *de novo* judicial review of a final decision of the Trademark Trial and Appeal Board ("TTAB"), an administrative agency of the United States Patent and Trademark Office ("USPTO").

## THE PARTIES

2. Oakley is a Washington corporation with a principal place of business at One Icon, Foothill Ranch, California 92610.

3. Defendant JMM is a California limited liability company with its principal place of business at 2807 Antigua Drive, Burbank, California 91504.

## JURISDICTION AND VENUE

4. This action seeks review and reversal of a decision by the Trademark Trial and Appeal Board of the United States Patent and Trademark Office to dismiss Opposition No. 91231865 to Application Serial No. 86/962,416 for FROGSKINS, in connection with "protective covers and cases for cell phones, laptop computers, tablet computers and portable media players" ("JMM's Application"). This action arises under the laws of the United States, 15 U.S.C. § 1071(b). Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338(a).

5. This Court has personal jurisdiction over JMM because JMM has regularly solicited business or derived substantial revenue from goods promoted, advertised, sold, used, and/or consumed within this District and expects its actions to have consequences in this District. Furthermore, JMM is actively registered to do business in the state of California.

6. Venue in this District is proper under 28 U.S.C. §§ 1391(b) because JMM is located within this District and regularly transacts business within this District.

## FACTUAL BACKGROUND

### Oakley's FROGSKIN Mark

7. Oakley is one of the world's leading manufacturers and distributors of fashion eyewear, sunglasses and related eyewear and sunglass accessories ("Sunglass Goods").

8. For decades, Oakley has pioneered sunglass fashion under multiple famous trademarks, including FROGSKINS, throughout the United States and the world.

9. Oakley has produced and distributed the Sunglass Goods under FROGSKINS since at least 1985, and since that time, Sunglass Goods bearing

FROGSKINS have become an iconic cultural symbol of fashion and luxury throughout the United States and the world.

10. Sunglass Goods bearing or associated with FROGSKINS are routinely worn and displayed by famous celebrities, such as Jessica Alba, Scarlett Johansson, Eva Mendes, Rihanna, Liv Tyler, Shaun White, Kiefer Sutherland, Kanye West, Mary-Kate Olsen, Reese Witherspoon, Adam Levine, and Lady GaGa.

11. Sunglass Goods bearing or associated with FROGSKINS are sold in every state throughout the U.S., both through affiliated Sunglass Hut retail stores and via third party distributors, such as SportRx.com, Saltcityoptics.com, Goodsee Co., MyEyeDoctor, Sunglass World, Glasses.com, Framesdirect.com, Shades, Sports Vision Bend, and Sunglass Shack, among others. The same goods are also sold online and are shipped to every state in the U.S.

12. Sunglass Goods bearing or associated with FROGSKINS have been featured in unsolicited articles in magazines such as POWDER Ski, HYPEBEAST, and VELONMAD. Likewise, the same FROGSKINS products have been featured in unsolicited articles in the Huffington Post and many other news outlets.

13. Sunglass Goods bearing or associated with FROGSKINS have been featured in major sponsorships with brand names such as Infinite Hero, Eric Koston, and Valentino Rossi, and have been featured in numerous major collaboration projects with fashion designers such as FRGMT, Colette, DQM, Staple Design, BKRW, and Atmos. Oakley has also featured famous celebrities in its advertising efforts for FROGSKINS products, such as R.I. Osborn, a famous pioneer in BMX racing.

14. Oakley owns U.S. federal trademark Reg. No. 4,194,197 for the trademark FROGSKINS for "eyewear, namely, sunglass and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces" in Class 009. A copy of this registration is attached hereto as **Exhibit A**.

15. Reg. No. 4,194,197 is valid, subsisting, and in good standing, constitutes prima facie evidence of Oakley's exclusive right to use FROGSKINS in interstate

commerce in connection with the goods specified in the registration, and serves as constructive notice of Oakley's ownership of the mark under 15 U.S.C. §§ 1057, 1072, and 1115. Further, the trademark registration has become incontestable as a matter of law under 15 U.S.C. § 1065.

16. Oakley is additionally the owner of additional U.S. common law trademarks for its well-known, distinctive, and famous FROGSKINS trademark (Reg. No. 4,194,197 and all of Oakley's FROGSKINS common law rights are hereinafter collectively referred to as the "FROGSKINS Mark").

17. Since 1985, Oakley has invested countless hours as well as millions of dollars to develop, promote, and maintain the FROGSKINS Mark in the United States, and has achieved revenue in excess of half a billion dollars for goods only sold under that mark, notwithstanding that FROGSKINS products are considered as luxury items.

18. As a result of substantial sales and extensive advertising and promotion, the FROGSKINS Mark has become widely and favorably known as identifying Sunglass Goods originating from, sponsored by or associated with Oakley. The public has come to associate the famous and distinctive FROGSKINS Mark with Oakley as the source of fashionable and luxurious Sunglass Goods sold under FROGSKINS.

19. By virtue of Oakley's efforts, the FROGSKINS Mark has gained significant and exceptionally valuable goodwill.

**JMM's Trademark Trafficking Business**

20. JMM is a limited liability company with a place of principal place of business that appears to be a house located in a residential cul-de-sac. Attached as **Exhibit B** hereto is an image taken from Google Maps' "street view" function that shows the house located at 2807 Antigua Dr., Burbank, CA 91504.

21. From the house shown in **Exhibit B**, JMM claims to source and sell goods (such as home appliances, consumer electronics and apparel) via brick and mortar locations and online, as well as license brands to third parties for use on consumer products.

22. Notwithstanding JMM's claims to the contrary, Oakley is not aware of any evidence that JMM provides any such goods or retail services, either through brick and mortar locations or online.

23. JMM does appear to license brands to third parties for use on consumer products. However, JMM does not license brands associated with any goodwill established by JMM. Instead, JMM registers trademarks already associated with famous brands in connection with various consumer products, and then offers those trademarks to third-party businesses who allegedly don't have the "time and investment" to establish their own respected brand and consumer loyalty.

24. For example, JMM, while operating from the residential house shown in **Exhibit B**, claims to own the well-known brand PACKARD BELL, among many others, despite having no known affiliation with the Packard Bell computer manufacturing company or its parent company, Acer.

25. In sum, JMM's business model is to: (1) identify famous brands that appear to have significant goodwill associated with them; (2) register trademarks using the names of those brands in connection with consumer goods that can be cheaply manufactured by third-party businesses and sold online; and (3) offer to license those trademarks to those third-party businesses for a significant fee.

26. As a result of JMM's actions, consumers are fooled into believing that the products sold by these third-party businesses are somehow associated with famous, trusted brands, like Oakley's FROGSKINS products. Indeed, that is JMM's intent, as the company advertises that "through licensing, JMM Lee unites our well-known brands with your innovative goods, enabling you to go to market with an established brand that consumers know and trust."

27. JMM's Application uses the term FROGSKINS, which is identical to Oakley's FROGSKINS Mark.

///

///

28. JMM's Application covers "protective covers and cases for cell phones, laptop computers, tablet computers and portable media players," which are related to Oakley's Sunglass Goods.

29. The goods covered in JMM's Application are also within the natural zone of expansion for Oakley's offerings under FROGSKINS, as Oakley already sells such goods under its house mark.

30. The channels of trade in JMM's Application are unrestricted, and thus are assumed to overlap with Oakley's similar unrestricted channels of trade for the FROGSKINS Mark. However, JMM has furthermore claimed that it plans to offer its goods through brick and mortar stores and online retail, which are identical to Oakley's demonstrated channels of trade.

31. JMM's bad faith intent to capitalize on the goodwill associated with Oakley's FROGSKINS Mark demonstrates that even JMM believes consumers will be confused by JMM's Application.

**Proceedings Before The USPTO And Trademark Trial And Appeal Board ("TTAB")**

32. On August 25, 2009, JMM or its owner Michael J. Lee filed a trademark application, Serial No. 77/812,182, for the intended mark FROGSKINS on an intent to use basis under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), in connection with "sunglasses, sunglass lenses, eyewear cases, sport goggles for use in skiing and snowboarding, eyewear accessories, namely, straps, neck cords and head straps which restrain eyewear from movement on a wearer."

33. Although JMM or its owner was temporarily able to obtain a registration for Serial No. 77/812,182, and that registration was voluntarily surrendered on April 27, 2011.

34. On April 3, 2016, JMM filed a federal trademark application, Serial No. 86/962,416, for the intended mark FROGSKINS on an intent-to-use basis under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), in connection with "protective

covers and cases for cell phones, laptop computers, tablet computers and portable media players" in Class 009, the same International Class in which Oakley's FROGSKINS Mark is filed.

35. Despite thorough investigation, Oakley is unaware of any actual efforts by JMM to sell, offer to sell or even plan to sell any goods in connection with either Serial No. 77/812,182 or JMM's Application.

36. Instead, JMM filed Serial No. 77/812,182 and JMM's Application solely with the intent of offering to license FROGSKINS to third party businesses, in line with its trademark trafficking enterprise.

37. As of the filing date of JMM's Application, JMM had no bona fide intention to use FROGSKINS in connection with the goods identified in JMM's Application.

38. JMM has never created any documented plan to use FROGSKINS in connection with the goods identified in JMM's Application.

39. During fact discovery in the TTAB opposition preceding this case, JMM provided no documentation of any efforts to manufacture, offer to sell, or sell any goods associated with FROGSKINS.

40. JMM's Application was published for opposition on August 23, 2016 by the USPTO.

41. On September 20, 2016, Oakley filed for and received a 90 day extension of time to oppose JMM's Application with the TTAB.

42. On December 20, 2016, Oakley filed a Notice of Opposition against JMM's Application with the TTAB. The proceeding was instituted under Opposition No. 91231865.

43. In its Notice of Opposition, Oakley alleged that the intended FROGSKINS mark, when used in connection with the goods identified in JMM's Application, is confusingly similar to Oakley's FROGSKINS Mark, and would be likely to cause consumer confusion, mistake, or deceive as to affiliation, connection or association

between Oakley and JMM, or as to the origin, sponsorship, or approval of Oakley's goods, services, or other commercial activities, in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

44. The Notice of Opposition was also based on the ground that the use and registration of FROGSKINS in connection with the goods set forth in JMM's Application will dilute the distinctiveness of the famous FROGSKINS Mark in violation of Section 2(c) of the Lanham Act, 15 U.S.C. § 1125(c).

45. The Notice of Opposition was also based on the ground that, contrary to JMM's assertions in JMM's Application, it was not entitled to use or register FROGSKINS in connection with the goods identified in JMM's Application.

46. The Notice of Opposition was also based on the ground that registration of JMM's Application would create statutory rights in favor of JMM, and thereby restrict, interfere with and damage Oakley in the unhampered conduct of its business and protection of its legitimate interests.

47. Following the exchange of written and document discovery, JMM ceased active participation in the opposition proceeding, i.e., JMM did not schedule depositions, prepare or file any testimony or notices of reliance, or prepare or file a trial brief. Indeed, JMM did not provide any facts or argument whatsoever during the testimony or trial periods to contradict the facts and arguments presented by Oakley.

48. On February 22 and 23, 2018, Oakley filed its testimony and four notices of reliance.

49. On August 7, 2018, Oakley filed its trial brief.

50. Contrary to and in spite of the substantial and unrebutted evidence of record, the TTAB issued a decision on December 14, 2018, finding that JMM's Application was not confusingly similar to Oakley's FROGSKINS Mark by: (1) failing to give proper weight to Oakley's evidence demonstrating commercial strength, similarity of the goods and likelihood of natural marketplace expansion; and (2) refusing to consider the overwhelming evidence of JMM's bad faith. Further, the TTAB found

that dilution of Oakley's FROGSKINS Mark was not likely on the grounds that Oakley has not presented sufficient evidence of fame. Therefore, Oakley's Notice of Opposition was dismissed. A true and correct copy of the December 14, 2018 decision of the TTAB is attached hereto as **Exhibit C**.

51. On January 14, 2019, Oakley filed a request for reconsideration of the Board's December 14, 2018 decision.

52. JMM filed a response to Oakley's request for reconsideration on January 31, 2019.

53. Oakley filed a reply brief in connection with its request for reconsideration on February 20, 2019.

54. On July 10, 2019, the Board denied Oakley's request for reconsideration.

55. The TTAB erred in numerous respects in its analysis in dismissing the Opposition and finding in JMM's favor.

56. This petition of appeal is timely per 15 U.S.C. § 1071(b).

## FIRST CAUSE OF ACTION

**(Reversal of the December 14, 2018 TTAB Decision)**

57. Oakley incorporates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

58. The December 14, 2018 decision of the TTAB is subject to *de novo* review under Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b).

59. The TTAB erred in finding that JMM's intended FROGSKINS trademark for the goods listed in JMM's Application is not likely to be confused with Oakley's famous FROGSKINS Mark.

60. The TTAB erred in finding that JMM's intended FROGSKINS trademark for the goods listed in JMM's Application will not dilute Oakley's famous FROGSKINS Mark.

///

///

61. At least the following aspects of the TTAB's December 14, 2018 decision are contrary to the pertinent law, unsupported by substantial evidence, and therefore, insufficient to support dismissal of Oakley's Oppositions under the Lanham Act:

a. The FROGSKINS Mark is one of the most famous trademarks in the sunglass and sunglass accessories category. The TTAB erred by not giving proper weight and consideration to the strength and fame of the FROGSKINS Mark and the evidence of substantial advertising, use, consumer recognition, marketing, and sales. Notably, although the TTAB acknowledged the "long use" of Oakley's FROGSKINS mark, it claimed that there was no evidence of the extent of consumer exposure to or recognition of the mark over the years. Yet, the TTAB also acknowledged Oakley's demonstration that many of the most famous celebrities in the world proudly wear and display Oakley's FROGSKINS products to their legions of fans, and that Oakley's FROGSKINS products are featured in unsolicited articles from major publications.

b. The TTAB erred in discounting the substantial evidence of the strength and fame of the FROGSKINS Mark and presuming that consumer recognition of the FROGSKINS Mark is impacted by the presence of the mark "Oakley," despite substantial evidence to the contrary.

c. The TTAB erred in determining that the "protective covers and cases for cell phones, laptop computers, tablet computers and portable media players" listed in JMM's Application are not sufficiently related to Oakley's Sunglass Goods, despite also acknowledging that the FROGSKINS Mark is a "commercially strong mark entitled to a broad scope of protection" and that Oakley indeed already sells goods overlapping with those listed in JMM's Application.

///

d. The TTAB erred in failing to give proper weight to the Declaration of Warren Modlin and other evidence of similarity of the goods, including unrebutted evidence of likelihood of Oakley's natural zone of expansion similarly contained in the Modlin Declaration.

e. The TTAB erred in refusing to consider the overwhelming and unrebutted evidence of JMM's bad faith, purely due to procedural reasons, where the TTAB was entitled to consider such evidence because of JMM's failure to object or otherwise participate at all in the trial.

62. Oakley will introduce additional evidence of the harm that would be caused to Oakley if the TTAB decision is not reversed, including but not limited to evidence of the fame of the FROGSKINS Mark, the amount of advertising and marketing expenditures in support of the FROGSKINS mark, consumer recognition of the FROGSKINS Mark, and the likelihood of confusion and dilution from JMM's use of FROGSKINS as set forth in JMM's Application.

63. The TTAB's decision was contrary to pertinent law, not supported by substantial evidence and/or was in error in light of the evidence of record with the TTAB, the allegations in this Complaint, and additional evidence to be submitted by Oakley as set forth above. Therefore, the TTAB's December 14, 2018 decision was insufficient to support dismissal of Opposition No. 91231865.

## **SECOND CAUSE OF ACTION**

### **(Declaration of Likelihood of Confusion under Federal Law)**

64. Oakley incorporates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

65. An actual controversy exists between Oakley and JMM regarding the likelihood of confusion between the FROGSKINS Mark and the FROGSKINS trademark appearing in JMM's Application.

///

66. Oakley is entitled to a declaration from the Court that the FROGSKINS trademark appearing in JMM's Application, for the goods cited in JMM's Application, is likely to cause confusion, or to cause mistake, or to deceive the purchasing public and others as to an affiliation, connection or association between Oakley and JMM, and/or as to the origin sponsorship, or approval of Oakley's goods, services, or other commercial activities in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

**THIRD CAUSE OF ACTION**

**(Declaration of Dilution under Federal Law)**

67. Oakley incorporates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

68. An actual controversy exists between Oakley and JMM regarding the dilution of the FROGSKINS Mark by JMM's use and potential registration of the FROGSKINS trademark appearing in JMM's Application, for the goods listed in JMM's Application.

69. The FROGSKINS Mark has, through extensive and widespread use by Oakley, become sufficiently distinct and well known by the public so as to be considered "famous" for purposes of the Lanham Act, 15 U.S.C. § 1125(c).

70. Oakley is entitled to a declaration from the Court that the use and registration of the FROGSKINS trademark appearing in JMM's Application for the goods cited in JMM's Application, are likely to dilute the distinctiveness of the FROGSKINS Mark, in violation of Section 2(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**FOURTH CAUSE OF ACTION**

**(Declaration of Defendants' Applications as *Void Ab Initio*)**

71. Oakley incorporates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

///

72. An actual controversy exists between Oakley and JMM regarding JMM's lack of a *bona fide* intention to use the mark FROGSKINS in connection with the goods identified in JMM's Application.

73. JMM has admitted, through its representatives, that it has never had a documented plan to use the mark FROGSKINS in connection with the goods identified in JMM's Application.

74. JMM has provided no specific written plan of action demonstrating its objective, bona fide intent to use the mark FROGSKINS in connection with the goods identified in JMM's Application at the time of filing JMM's Application.

75. At the time of filing JMM's Application, JMM had no *bona fide* intent to use the mark FROGSKINS in connection with the goods identified in JMM's Application.

76. Oakley is entitled to a declaration from the Court holding that JMM's Application is *void ab initio*, and should thus be denied registration.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Oakley, Inc. respectfully requests that the Court:

A. Enter judgment reversing and vacating the December 14, 2018 decision of the TTAB in the matter of *Oakley, Inc. v. JMM Lee Properties, LLC,* Opposition No. 91231865 referenced herein, pursuant to 15 U.S.C. § 1071(b);

B. Sustain Opposition No. 91231865 against JMM and in favor of Oakley;

C. Direct the Director of Trademarks to deny registration of JMM's Application;

D. Declare that JMM's proposed FROGSKINS trademark, when used and registered in connection with the goods set forth in JMM's Application, is likely to cause mistake, or to deceive the purchasing public and others as to an affiliation, connection or association between Oakley and JMM, and/or as to the origin sponsorship, or approval of JMM's goods, services, or other commercial activities in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

E. Declare that use and registration of JMM's proposed FROGSKINS trademark for the goods cited in JMM's Application is likely to dilute the distinctiveness of the FROGSKINS Mark, in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1125(c);

F. Declare that JMM's Application is *void ab initio;* and

G. Award Oakley such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated: September 10, 2019

DINSMORE & SHOHL LLP

By: /s/ Stephen K. Cho
Stephen K. Cho
Karen Kreider Gaunt
Michael J. Wheeler

Attorneys for Plaintiff
OAKLEY, INC.